UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

UNITED STATES OF AMERICA

v.                                                    FILED UNDER SEAL

ALEJANDRO ANDRADE CEDENO,

　Defendant.
_____/

## PLEA AGREEMENT

The United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Southern District of Florida (collectively, the "Government") and **ALEJANDRO ANDRADE CEDENO** (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant understands that he has the right to have the evidence and charge against him presented to a federal grand jury for determination of whether there is probable cause to believe he committed the offense for which he is charged.  Understanding that right, and after full and complete consultation with his counsel, the defendant agrees to waive in open court his right to prosecution by Indictment, agrees to waive any challenges to the statute of limitations or venue, and agrees that the Government may proceed by way of an Information filed pursuant to Rule 7 of the Federal Rules of Criminal Procedure.

2. The defendant agrees to plead guilty to a single-count Information, which charges the defendant with conspiracy to violate Title 18, United States Code, Section 1957, that is, to knowingly engage and attempt to engage in monetary transactions by, through, or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value

greater than $10,000, such property having been derived from a specified unlawful activity (i.e. a violation of the Foreign Corrupt Practices Act ("FCPA"), in violation of Title 15, United States Code, Section 78dd-3) in violation of Title 18, United States Code, Section 1956(h).

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory Sentencing Guidelines range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph two and that the defendant may not withdraw his plea solely as a result of the sentence imposed.

4. The defendant also understands and acknowledges that the Court may impose a statutory maximum term of imprisonment of up to ten years, followed by a term of supervised release of up to three years. In addition to a term of imprisonment and supervised release, the

2

Court may impose a fine of up to $250,000 or not more than twice the amount of the criminally derived property involved in the transaction relating to the offense set forth in paragraph two above, and the Court may also order forfeiture and restitution.

5. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph three of this agreement, a special assessment in the amount of $100 will be imposed on the defendant. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If the defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to the Government and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

6. The Government reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, the Government further reserves the right to make any recommendation as to the quality and quantity of punishment.

7. The Government agrees that it will recommend at sentencing that the Court reduce by two levels the Sentencing Guidelines level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If, at the time of sentencing the defendant's offense level is determined to be 16 or greater, the Government will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to

3

enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. The Government, however, will not be required to make this motion and this recommendation if the defendant: (a) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (b) is found to have misrepresented facts to the Government prior to entering into this plea agreement; or (c) commits any misconduct after entering into this plea agreement, including, but not limited to, committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

8. The defendant agrees that he shall cooperate fully with the Government by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by the Government, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by the Government; and (c) if requested by the Government, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents. In addition, the defendant agrees that he will not protect any person or entity through false information or omission, that he will not falsely implicate any person or entity, and that he that he will not commit any further crimes.

9. The Government reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing. If in the sole and unreviewable judgment of the Government, the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range

calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, the Government may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires the Government to file any such motions, and that the Government's assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of the Government's filing or non-filing of a motion to reduce sentence.

10. The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by the Government. In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

11. The defendant agrees to forfeit to the United States voluntarily and immediately all property, real or personal, involved in the violation of Title 18, United States Code, Section 1956(h) charged in the Information, property traceable to such property, and/or property that constitute substitute assets, pursuant to Title 18, United States Code, Section 982(a)(1) and Title 21, United States Code, Section 853(p). The defendant agrees that such property includes, but is not limited to, a sum equal in value to the total amount laundered to, by, and/or for the benefit of the defendant as part of the charged conspiracy, which the United States may seek as a forfeiture money judgment. The defendant agrees to consent to the entry of orders of forfeiture for such property. The defendant admits and agrees that the conduct described in the Information and

5

Factual Proffer provides a sufficient factual and statutory basis for the forfeiture sought by the Government.

12. The defendant agrees to waive any appeal of the forfeiture. The defendant waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the Information, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. The defendant also waives any failure by the Court to advise the defendant of any applicable forfeiture at the time the guilty plea is accepted as required by Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure. The defendant further agrees to waive any applicable time limits for the initiation of administrative or judicial forfeiture proceedings and/or further notification of any such forfeiture brought against the property sought for forfeiture.

13. The defendant also agrees to assist the Government in all proceedings, administrative or judicial, involving forfeiture to the United States of any property, including substitute property, regardless of its nature or form, real or personal, which the defendant or others known to the defendant, have accumulated as a result of illegal activities. The defendant agrees that the United States shall, at its option, be entitled to forfeiture of any property (substitute assets) of the defendant to satisfy the forfeiture money judgment. The defendant agrees that all elements of Title 21, United States Code, Section 853(p) have been satisfied. The defendant further agrees to take all steps necessary to locate property that could be used to satisfy the forfeiture money judgment and to pass title to the United States before the defendant's sentencing. To that end, the defendant agrees to fully assist the Government in the recovery and return to the United States of any assets, or portions thereof, wherever located. The assistance shall include: identification of any property subject to forfeiture, agreement to the entry of an order enjoining the transfer or

encumbrance of such property, and the transfer or repatriation of such property to the United States by delivery to the Government, upon the Government's request, any necessary and appropriate documentation, including consents to forfeiture and quit claim deeds, to deliver good and marketable title to such property. The defendant understands that failure to transfer or repatriate property subject to forfeiture may result in an obstruction of justice enhancement at sentencing.

14. The defendant further understands that forfeiture is independent of any assessments, fines, costs, restitution, or any other penalty that may be imposed by the Court. The defendant knowingly and voluntarily waives any claim or defense he may have under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to the forfeited property.

15. The defendant agrees to make full and accurate disclosure of his financial affairs to the Government, and expressly authorizes the Government to obtain a credit report. The defendant agrees that within 45 calendar days of his change of plea and upon request of the Government, the defendant shall submit a completed Financial Disclosure Statement (form provided by the United States), and shall fully disclose and identify all assets in which he has any interest and/or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party.

16. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the Government in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the

result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the Government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the Government appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.

17. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, the Government, or the probation office, is a prediction, not a promise, and is not binding on the Government, the probation office, or the Court. The defendant understands further that any recommendation that the Government makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph three above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, the Government, or a recommendation made jointly by the defendant and the Government.

18. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status if the defendant is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which the defendant is pleading guilty. Removal and other immigration consequences are the subject of a

8

separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the defendant's plea may entail, even if the consequence is the defendant's automatic removal from the United States.

19. The Government and the defendant stipulate to and agree not to contest the facts in the Factual Proffer, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the plea of guilty in this case. The defendant agrees that the facts in the Factual Proffer are true and correct to the best of the defendant's knowledge. Because the factual basis set forth in the Factual Proffer has the limited purpose of supporting the defendant's guilty plea to the charge discussed in paragraph two, the factual basis set forth in the Factual Proffer does not purport to represent all facts and circumstances relating to the defendant's participation. Similarly, the factual basis in the Factual Proffer is not intended to identify all knowledge the defendant might have of the unlawful activity of other individuals.

20. In the event the defendant withdraws from this agreement prior to or after pleading guilty to the charge identified in paragraph two above, or should the Government, in its sole discretion, determine that the defendant has failed to fully comply with any of the terms of this plea agreement, the Government will be released from its obligations under this agreement, and the defendant agrees and understands that:

(a) the defendant thereby waives any protection afforded by any proffer letter agreement between the parties, Section 1B1.8 of the Sentencing Guidelines, Rule 11(f) of the Federal Rules of Criminal Procedure, and Rule 410 of the Federal Rules of Evidence;

9

(b) that any statements made by the defendant as part of the plea discussions, any debriefings or interviews, or in this agreement, whether made prior to or after the execution of this agreement, will be admissible against him without any limitation in any civil or criminal proceeding brought by the Government;

(c) the defendant's waiver of any defense based on the statute of limitations and venue, including the waiver set forth in this agreement, or any defense based on the passage of time in filing an Indictment or Information, referred to herein, shall remain in full force and effect;

(d) the defendant stipulates to the admissibility and authenticity, in any case brought by the United States in any way related to the facts referred to in this agreement, of any documents provided by the defendant or the defendant's representatives to any state of federal agency and/or the Government; and

(e) the defendant has adopted the entire factual basis as the defendant's statements, and the defendant has stipulated to the admissibility of the Factual Proffer in any case brought by the United States.

*[The remainder of this page was intentionally left blank.]*

21. This is the entire agreement and understanding between the Government and the defendant. There are no other agreements, promises, representations, or understandings.

Date: 12/19/2017

By: *Vanessa Snyder*
VANESSA SNYDER
PAUL HAYDEN
TRIAL ATTORNEYS

SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
Criminal Division
U.S. Department of Justice

Date: 12/19/2017

By: *Michael B Nadler*
MICHAEL NADLER
ASSISTANT U.S. ATTORNEY
United States Attorney's Office
Southern District of Florida

Date: 12/19/2017

*CBM*
CURTIS MINER
ATTORNEY FOR DEFENDANT

Date: 12/19/2017

ALEJANDRO ANDRADE CEDENO
DEFENDANT

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. _____

UNITED STATES OF AMERICA

v.                                                                FILED UNDER SEAL

ALEJANDRO ANDRADE CEDENO,

**Defendant.**
_____/

## FACTUAL PROFFER

The following Factual Proffer is incorporated by reference as part of the Plea Agreement between the United States Department of Justice, Criminal Division, Fraud Section and the United States Attorney's Office for the Southern District of Florida (collectively, the "Government"), and the Defendant, Alejandro Andrade Cedeno (the "Defendant"). The Defendant agrees and stipulates that the following information is true and accurate. Had this matter proceeded to trial, the Defendant acknowledges that the Government would have proven, beyond a reasonable doubt, the facts alleged below and the charge and forfeiture allegations set forth in the criminal Information.

1. Since approximately 2012, the Defendant maintained a residence in Wellington, Florida.

2. The Oficina Nacional del Tesoro ("ONT") is the Venezuelan National Treasury.

3. In approximately 2007, the President of Venezuela appointed the Defendant to the position of Venezuelan National Treasurer. The Defendant served in that position until

approximately January 2011. During that time period, the Defendant was an official of the Venezuelan government and a department and agency of the Venezuelan government.

4. The ONT held U.S. dollar accounts at various financial institutions, including at least one in the United States.

5. To meet government obligations in bolivars in Venezuela, the ONT would sell bonds from its portfolio that were denominated in U.S. dollars or other currencies. The ONT could then choose to exchange the proceeds from these bond sales at the Venezuelan National Bank's established exchange rate or at a *casa de bolsa*, or brokerage house. The *casas de bolsa* had access to a parallel market for exchange, which provided a much higher exchange rate than the Venezuelan National Bank exchange rate. Because the *casas de bolsa* received this higher rate, the *casas de bolsa* could pay the ONT at a higher rate than the Venezuelan National Bank rate and still retain a substantial profit for itself.

6. By virtue of his official position as the Venezuelan National Treasurer, the Defendant had the ability to influence and decide which brokerage houses received government business to conduct these U.S. dollar to bolivar exchanges.

7. From approximately 2007 through January 2011, the Defendant agreed to accept bribes from co-conspirators in exchange for selecting them to carry out the U.S. dollar to bolivar exchange process with the ONT, which allowed those co-conspirators to obtain substantial profits on the exchange transactions. The co-conspirators agreed to bribe the Defendant in order to secure improper advantages from the Defendant and secure additional profits in the business deals.

8. In furtherance of the scheme, one or more of the bribe payers made payments to the Defendant in the Southern District of Florida, and took acts and caused others to take acts in the

2

Southern District of Florida. The Defendant received the bribes from this arrangement through in or about November 2017.

9. For example, in approximately 2010, Co-Conspirator 1 ("CC-1"), a Venezuelan national who maintains a residence in Miami, Florida, solicited the Defendant to permit a brokerage house that CC-1 operated to participate in the exchange process. CC-1 offered to pay the Defendant a share of any profit CC-1 made from the business deals. The Defendant accepted CC-1's proposal and selected CC-1's brokerage house to participate in the exchange process.

10. In addition, one or more of the bribe-paying co-conspirators used the proceeds of the corrupt scheme to engage in financial transactions in amounts greater than $10,000. For example, CC-1 purchased real estate, vehicles, and other luxury items for the Defendant and his family and friends, many of which involved transactions greater than $10,000. CC-1 purchased items, including but not limited to, houses in Wellington, Florida; aircraft; and horses for the Defendant's use and benefit. CC-1 also controlled one or more bank accounts in Switzerland in which CC-1 held proceeds of the scheme that could be made available to the Defendant. These accounts contained approximately $70 to $80 million, which CC-1 used to pay the Defendant's expenses. From approximately 2010 to in or about the present, when the Defendant requested items from CC-1, CC-1 would send money from his bank account in Switzerland to purchase items in the Southern District of Florida.

11. For example, on or about the following dates, in furtherance of CC-1's money laundering conspiracy with the Defendant, CC-1 caused four wire transfers in the following approximate amounts from an account controlled by CC-1 at Compagnie Bancaire Helvetique in Switzerland to an account in the United States to purchase aircraft used by the Defendant, among others.

3

  a. May 30, 2012 - $6,300,084.80

  b. June 11, 2012 - $20,000,085.90

  c. October 1, 2012 - $1,000,086.80

  d. October 17, 2012 - $6,405,088.40

12. For example, on or about February 25, 2013, in furtherance of CC-1's money laundering conspiracy with the Defendant, CC-1 caused a wire transfer in the amount of approximately $150,000 from an account controlled by CC-1 at Compagnie Bancaire Helvetique in Switzerland to an account at Wells Fargo in Wellington, Florida, to pay expenses related to the Defendant's horses.

SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
Criminal Division
U.S. Department of Justice

Date: 12/19/2017

By: *[signature]*
VANESSA SNYDER
PAUL HAYDEN
TRIAL ATTORNEYS

Date: 12/19/2017

By: *[signature]*
MICHAEL NADLER
ASSISTANT U.S. ATTORNEY
United States Attorney's Office
Southern District of Florida

Date: 12/19/2017

*[signature]*
CURTIS MINER
ATTORNEY FOR DEFENDANT

Date: 12/19/2017

*[signature]*
ALEJANDRO ANDRADE CEDENO
DEFENDANT

4