UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. <u>17-cr-80242-ROSENBERG</u>



UNITED STATES OF AMERICA

v.

SEALED DEFENDANT,

    Defendant.
_____/

## GOVERNMENT'S MEMORANDUM CONCERNING VICTIM NOTICE AND RESTITUTION

The government respectfully submits this memorandum pursuant to the Court's May 29, 2018, request for information concerning victim notice and restitution. As discussed below, based on the information currently available, the government submits that the Government of Venezuela does not qualify for victim notice or restitution under the applicable statutes.

### Factual Background

The Venezuelan Government has a foreign currency exchange system under which the government will exchange its local currency (bolivars) at a fixed rate for certain foreign currency. The fixed exchange rate has been well below the black market rate by a substantial factor for several years. For example, in 2014, if an individual used the Venezuelan Government fixed exchange rate, he could trade approximately six bolivars for one dollar. By contrast, if the individual used the black market exchange rate, it would take approximately sixty bolivars to obtain one dollar.

The difference between the fixed exchange and the black market exchange rates creates opportunity for fraud and abuse. For example, in 2014, if an individual had access to the fixed

exchange rate, an individual could exchange six million bolivars at the fixed exchange rate and obtain one million dollars. Subsequently, the individual could exchange the one million dollars at the black market exchange rate for sixty million bolivars. In this way, the individual could convert six million bolivars into sixty million bolivars.

The Venezuelan Government uses brokerage houses to conduct foreign currency exchanges. Only brokerage houses approved by the Oficina Nacional del Tesoro ("ONT") have the ability to conduct exchange contracts with the Venezuelan Government at the fixed exchange rate. From approximately 2007 to 2012, the defendant was the Venezuelan National Treasurer. By virtue of his official position as the Venezuelan National Treasurer, the defendant had the ability to influence and decide which brokerage houses received government business to conduct these currency exchanges at the fixed rate, and thereby profit immensely from the exchanges. The defendant has pleaded guilty and admitted accepting bribes in exchange for authorizing their participation in the foreign exchange process with the ONT, as well as conspiring to launder funds in the United States.

## Discussion

### 1. Crime Victims' Rights Act, Mandatory Victims Restitution Act, and Victim and Witness Protection Act

The CVRA defines a victim as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense . . . ." 18 U.S.C. § 3771(e). In the Eleventh Circuit, courts use a two-part test to determine whether a person is a crime victim. *See In re Stewart*, 552 F.3d 1285, 1288 (11th Cir. 2008). First, courts "identify the behavior constituting 'commission of a Federal offense,'" *Stewart*, 552 F.3d at 1288, and in conspiracy cases, courts look at the central aim of the conspiracy, *see, e.g., In re McNulty*, 597 F.3d 344, 351-352 (6th Cir. 2010) (evaluating statute of offense). Second, courts "identify the direct and proximate effects of

that behavior on parties other than the United States. If the criminal behavior causes a party direct and proximate harmful effects, the party is a victim under the CVRA." *Stewart*, 552 F.3d at 1288. The "'direct[ ] and proximate[ ] harm[ ]'" elements require that the conduct underlying at least one of the elements of the offense must be a but-for cause of the "'crime victim's'" harm, and the harm must be "'a reasonably foreseeable consequence of the criminal conduct.'" *United States v. Credit Suisse AG*, 2014 WL 5026739, at *4 (E.D. Va. Sept. 29, 2014) (citing *In re Fisher*, 640 F.3d 645, 648 (5th Cir.2011)); *see also United States v. Vergez*, 2016 WL 695709 at *5 (N.D. Ala. Feb. 22, 2016). For conspiracy cases, courts determine whether the harm alleged to the victim was proximately caused by the express purpose of the conspiracy. *See, e.g., McNulty*, 597 F.3d at 352. The question hinges on whether the potential victim "was directly and proximately harmed by criminal conduct in the course of the conspiracy or if the actions taken by defendants in the underlying case which allegedly harmed [the purported victim] were merely ancillary to the conspiracy." *Id.* at 351. In addition, the *McNulty* court noted that, based on the definition of a conspiracy, "it appears logical that those directly and proximately harmed by criminal conduct in the course of a conspiracy beyond the overt act required to prove the conspiracy would be victims under the CVRA, just as they would be under the VPWA and MVRA." *Id.* at 351 n.6.

The CVRA "does not limit the class of crime victims to those whose identity constitutes an element of the offense or who happen to be identified in the charging instrument. *Stewart*, 552 F.3d at 1289. Rather, the CVRA "instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties." *Id.* "Under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." *Id.*; *see also United States v. Washington*, 434 F.3d 1265, 1268-1270 (11th Cir.2006) (finding that having property damaged

during the escape from a bank robbery qualifies one as a victim under the MVRA because the damage was a direct and proximate result of the offense).

Similar to the CVRA, the MVRA and the VWPA define a victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered, including, in the case of an offense that involves as an element a scheme conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern." 18 U.S.C. § 3663(a)(2); *id* § 3663A(a)(2). Under the VWPA, the term "victim" is defined more broadly (although some courts use the more expansive definition for the CVRA too, *see, e.g., McNulty*, 597 F.3d at 351 n.6). In the context of the MVRA,[1] the Eleventh Circuit has held that "directly and proximately" means that "[t]he government must show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal connection between the conduct and the loss is not too attenuated." *United States v. Robertson*, 493 F.3d 1322, 1334 (11th Cir. 2007) (internal citation and quotations omitted). The Eleventh Circuit also stated that the defendant's conduct "need not be the sole cause of the loss, but any subsequent action that contributes to the loss, such as an intervening cause, must be directly related to the defendant's conduct. The causal chain may not extend so far, in terms of the facts or the time span, as to become unreasonable." *Id*. (internal citation and quotations omitted).

A court "must [or may for VWPA] order restitution to all victims for losses they sustained as a result of the defendants' conduct during the course of the conspiracy, as long as the losses

---

[1] *See Vergez*, 2016 WL 695709 at *5 (discussing *Robertson* in the context of the CVRA and noting (n.1) that the "definition of 'crime victim' in the CVRA is based on the similar definition in the MVRA"). *See also In re McNulty*, 597 F.3d at 350, n.6 ("[W]e find our case law construing the VWPA and MVRA persuasive, both for how the CVRA is to be interpreted, and for when an individual qualifies as a victim of conspiracy.").

resulted directly from the defendants' conduct and were closely related to the conspiracy." *United States v. Hirmer*, 767 F.Supp.2d 1305, 1309 (N.D. Fla. 2011) (citing *United States v. Valladares*, 544 F.3d 1257, 1269 (11th Cir. 2008); *United States v. Dickerson*, 370 F.3d 1330, 1339–43 (11th Cir. 2004)). *See also United States v. Edwards*, 728 F.3d 1286, 1293 (11th Cir. 2013). But "a criminal defendant cannot be compelled to pay for restitution for conduct committed outside the scheme, conspiracy, or pattern of criminal behavior underlying the offense of conviction." *Dickerson*, 370 F.3d at 1341.

### 2. Analysis

Under the CVRA, the Government of Venezuela does not qualify as a "victim," as the CVRA's definition of "person" does not include sovereign entities. S*ee e.g. Vermont Agency of Natural Res. V. U.S. ex rel. Stevens*, 529 U.S. 765, 780-81 (2000) (interpretative presumption is grounded in part on the language of the Dictionary Act, 1 U.S.C. § 1 the CVRA's definition of "person" does not include sovereign entities. S*ee e.g. Vermont Agency of Natural Res. V. U.S. ex rel. Stevens*, 529 U.S. 765, 780-81 (2000) (interpretative presumption is grounded in part on the language of the Dictionary Act, 1 U.S.C. § 1). Moreover, the U.S. Attorney General Guidelines for Victim and Witness Assistance (2012) ("AG Guidelines") provide that "[n]either the federal government nor any state, local, tribal, or foreign government or agency thereof fall under the definition of crime victim for either mandatory services or court enforceable rights." *See* AG Guidelines at 12. At least one district court has concluded, based on the Dictionary Act and the AG Guidelines, that a sovereign entity cannot be a "crime victim" under the CVRA. *See United States v. Kasper*, 60 F. Supp 3d 11777, 1178-79 (D.N.M. 2014) (tribal government was not a crime victim for purposes of the CVRA); *see also In re Her Majesty the Queen in Right of Canada*, 785 F. 3d 1273, 1277 (9th Cir. 2015) (per curiam) (noting the open question of whether

a foreign sovereign "is a 'person' who may be a "crime victim" under 18 U.S.C. § 3771(e)," but declining to reach the issue and denying restitution on other grounds).[2]

Regardless, the Government of Venezuela's complicity in this conspiracy renders victim status inappropriate under any applicable statute. The defendant, who accepted bribe payments to authorize co-conspirators to conduct currency exchanges on behalf of the Venezuelan Government, was the *Venezuelan* National Treasurer. Under these circumstances – where a member of the Venezuelan Government is a co-conspirator in the charged offense – it would be inappropriate to afford the Government of Venezuela victim status for purposes of the MVRA or any other applicable statute.

### 3. Conclusion

For the reasons stated above, the government submits that the Venezuelan Government does not qualify for victim status under the CVRA, MVRA, and VWPA in this case. In light of the Court's inquiry on this issue, and pursuant to its obligations under the applicable statutes, the government will continue to examine this issue as the case and overall investigation progress.

---

[2] Sovereign entities can be recognized as victims entitled to restitution under the MVRA. *See United States v. Zhang*, 789 F.3d 214, 216-17 (1st Cir. 2015) (IRS was an eligible victim under the MVRA and collecting cases). The government respectfully submits that, if the Court believes it necessary to inquire further into this issue, it may be appropriate to postpone consideration until the defendant's sentencing hearing when the factual record is likely to be even further developed.

Respectfully submitted,

SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
Criminal Division
U.S. Department of Justice

Date: 7/27/2018          By: _____ for
                              VANESSA SNYDER
                              PAUL HAYDEN
                              TRIAL ATTORNEYS

Date: 7/27/2018          By: _____
                              MICHAEL NADLER
                              ASSISTANT U.S. ATTORNEY
                              United States Attorney's Office
                              Southern District of Florida